**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Marlyn Nutraceuticals, Inc., | ) | No. CV-08-1798-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Improvita Health Products, et al., | ) | |
| Defendant. | ) | |

Currently before the Court are Defendants Thomas Klamet and Daniel Kohler's Motion For Judgement on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. In the same motion, these Defendants also request that the Court dismiss Plaintiff's claims for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. After reviewing the pleadings and determining that oral argument is unnecessary, the Court issues the following order.

**I.      BACKGROUND:**

On May 15, 2007, Plaintiff MNI and Defendant Improvita entered into a Manufacturing and Supply Agreement (the "Agreement") pursuant to which MNI would manufacture and supply nutritional products and supplements to Improvita. (Dkt. #1,¶10). The Agreement provides that all disputes must be resolved through an arbitration process pursuant to Article XVIII, entitled "Dispute Resolution." (Dkt. #11, Ex. B). The Agreement provides that Improvita will pay MNI for all finished product or work in

process, and all unused ingredients that can not be returned. (Dkt. #11, ¶11). Improvita fell behind on payments; from approximately October 2007 through late February 2008, MNI attempted to work with Improvita with respect to its delinquent debts. (Id., ¶14). On February 29, 2008, due to Improvita's failure to pay down its debts and alleged attempt to delay resolving the payment issues, MNI initiated negotiation proceedings pursuant to the Agreement's notice provision in Article XVIII. (Id., ¶19). MNI's February 29, 2008 notice demanded that Improvita agree to formally mediate the payment dispute on or before the close of business on March 5, 2008. (Id., ¶21). MNI also provided names of potential mediators in Phoenix, Arizona, and approximately eight possible dates on which the parties could mediate. (Id.). Improvita failed to respond to MNI's request until March 4, 2008. (Id., ¶20, Ex. C).

Having made no progress through alternative dispute resolution, MNI filed a Complaint against Improvita in Maricopa County Superior Court on March 20, 2008. (Dkt. #11, ¶23). Improvita subsequently filed a Motion to Dismiss, arguing that the dispute must be resolved through mediation or arbitration based on the alternative dispute resolution provision in the May 15, 2007 Agreement. (Id.). MNI did not file a responsive memorandum to Defendants' Motion to Dismiss, and the Superior Court dismissed the case. (Id., ¶24).

On May 19, 2008, MNI and Improvita submitted to a mediation in Phoenix, Arizona. (Dkt. #11, ¶24). In preparation for the mediation, MNI submitted a 13 page Mediation Memorandum, including 25 exhibits; Improvita made no settlement offers and raised its alleged defenses less than one week prior to the mediation. (Id., ¶25). Improvita did not provide supporting documentation. (Id., ¶28). Although the mediation was unsuccessful, the parties attempted to schedule an arbitration. (Id., ¶25). Based on correspondence between the parties' counsel, an arbitration was scheduled for August 19, 2008, before Steve Scott in Phoenix, Arizona. (Id., ¶26). However, one week after arbitration was scheduled, Improvita informed MNI that due to a scheduling conflict, the arbitration could not take place before August 26, 2008. (Id., ¶27). The parties

1   rescheduled the arbitration for August 27, 2008, to take place before Daniel Nastro. (Id.,

2   ¶29). The parties also agreed on a disclosure statement date for discovery and relevant

3   arbitration issues; Improvita confirmed the August 27, 2008 arbitration date in a letter

4   dated July 1, 2008. (Id.). But on August 14, 2008, Improvita announced that it would not

5   participate in the scheduled arbitration because of the "associated expenses"; it proceeded

6   to cancel the arbitration and offered to reschedule one after October 1, 2008. (Id., ¶30).

7   Instead, on October 1, 2008, MNI filed a Complaint against Improvita and Defendants

8   Klamet and Kohler in this Court for breach of contract, viewing Improvita's cancellation

9   of the arbitration as an act of bad faith and an attempt to further delay resolution. (Dkt.

10  #1).  Defendants filed a Motion to Dismiss on October 6, 2008, and request dismissal

11  pursuant to Federal Rules of Civil Procedure 12(b)(1)(2)(3) and (6). (Dkt. #7).  On

12  November 24, 2008, the Court granted the Defendants' Motion to Dismiss without

13  prejudice and ordered the Parties to submit to arbitration no later than December 23,

14  2008.  (Dkt. #16).  The Court further ordered that if the arbitration did not occur within

15  the specified time, it would permit the Plaintiff to file a motion to re-open the case.  (Id.).

16          On December 02, 2008, Improvita filed a Motion to Continue Arbitration.  (Dkt.

17  #18).  The Court denied the Defendants' motion, ordering the parties to meet and confer

18  to select an arbitrator no later than December 12, 2008.  (Dkt. # 20).  On January 27,

19  2009, MNI filed a Motion to Re-Open the Case, alleging that Defendants refused to

20  arbitrate the dispute by the court-ordered date, (Dkt. #21), along with its First Amended

21  Complaint.  (Dkt. #22).  In response, on February 13, 2009, Defendants filed the

22  following with the Court:  Response to Plaintiff's Motion to Re-Open the Case, (Dkt.

23  #23),  Separate Answer to Amended Complaint by Improvita Health Products, Inc., (Dkt.

24  #24), Separate Answer to Amended Complaint by Thomas Klamet, Daniel Kohler, (Dkt.

25  #25), Motion For Judgement on the Pleadings pursuant to Rule 12(c) of the Federal Rules

26  of Civil Procedure.  (Dkt. #26).  The Court granted the MNI's Motion to Re-Open on

27  February 17, 2009.

28

In the instant motion before the Court—Defendant's Motion For Judgement on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure— Individual Defendants Klamet and Kohler contend that judgement on the pleadings is appropriate because their status as corporate officers shields them from personal liability with regards to Plaintiff's claims. (Id.). Additionally, these Defendants argue that the Court may not exercise jurisdiction over them. (Id.). Plaintiff, on the other hand, counters that its pleadings properly allege actionable claims and make a *prima facie* showing of personal jurisdiction over Defendants Klamet and Kohler. (Dkt. #28).

## II:    DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS:

### A.    Standard:

Rule 12(c) of the Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. "Judgment on the pleadings is proper, when, taking all of the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Honey v. Distelrath, 195 F.3d 531, 532–33 (9th Cir. 1999). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (internal quotation marks omitted).

### B.    Discussion:

In its Amended Complaint, Plaintiff plead two separate tort claims against these Defendants: fraud and negligent misrepresentation. As to both claims, Defendants Klamet and Kohler argue that as corporate representatives of Improvita, they cannot be held personally liable to Plaintiff absent a piercing of the corporate veil based on "alter-ego" theory. (Dkt. #26, p.4). Accordingly, Defendants contend that Plaintiff's claims must fail as a matter of law because its pleadings do not state facts sufficient to warrant a piercing of the corporate veil. Id. Plaintiff, on the other hand, denies that piercing the

- 4 -

corporate veil is necessary in this case. (Dkt. # 28, p.3). Instead, it argue that corporate officers may be held personally liable for torts committed in their official capacity without piercing the corporate veil, and, as a result, its pleadings have sufficiently stated a claim. Id..

As a general matter, under Arizona law, "[t]he corporate fiction will be disregarded when the corporation is the alter ego of the business conduit of a person, and when to observe the corporation would work an injustice. The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." Dietel v. Day, 492 P.2d 455, 457 (Ariz. App. 1972). When determining the presence of alter-ego status, courts must consider, among other factors, the corporation's failure to "maintain the formalities of separate corporate existence; . . . plaintiff's lack of knowledge of separate corporate existence; and [the] commingling of personal and corporate funds." Deutsche Credit Corp. v. Case Power & Equipment Co., 876 P.2d 1190, 1196 (Ariz. App.1994). This Court aggress with Defendants; Plaintiff's complaint does not contain facts that justify a piercing of the corporate veil. This omission, however, is not necessarily fatal to its claims.

"[C]orporate directors are not personally liable for torts committed by the corporation or by one of its officers merely by virtue of the office they hold." Bischofshausen, Vasbinder, and Luckie v. D.W. Jaquays Min. and Equipment Contractors Co., 145 Ariz. 204, 211 (App. 1985). "[T]heir status," however, "does not shield them from personal liability." Albers v. Edelson Technology Partners L.P., 201 Ariz. 47, 52 (App. 2001). Under Arizona law, corporate officers, managers, or directors may be held personally liable for a corporation's torts where they have "participated [in the tort] or have knowledge amounting to acquiescence or be guilty of negligence in the management or supervision of the corporate affairs causing or contributing to the injury." Bischofshausen, 145 Ariz. at 210; see Dawson v. Withycombe, 216 Ariz. 84, 101 (App. 2007) ("a director cannot be liable without some kind of personal participation in the tort

or at least acquiescence by knowledge of the tort combined with a failure to act."). Furthermore, such liability is not contingent upon the defendant having acted individually or in furtherance of personal interests: "a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own . . . even though his action in such respect may be in furtherance of the corporate business." Albers, 201 Ariz. at 52 (quoting 18B AM..JUR. 2D CORPORATIONS § 1882 (1985)).

Based on the preceding analysis, it is clear that the corporate veil need not be pierced when the assertion of an officer or board members' personal liability is based on an allegation of tortious conduct. The instant case is such a situation; Plaintiff has plead that the Defendants personally participated in two torts—fraud and negligent misrepresentation. Accordingly, this Court cannot find that Plaintiff's claims must fail as a matter of law simply because Plaintiff did not allege facts sufficient to pierce the corporate veil. The more difficult question for this Court, however, concerns an ambiguity in Arizona law: do unintentional torts—negligence—subject an officer or board member to personal liability. The Court must address this issue, as under Arizona law, "[a] claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence." Pettay v. Insurance Marketing Services, Inc., 156 Ariz. 365, 368 (App. 1987) (quoting Van Buren v. Pima Community College District Board, 113 Ariz. 85, 87 (1976)).

In Albers the Arizona Court of Appeals limited personal liability to "intentionally harmful or fraudulent conduct." Albers, 201 Ariz. at 52. This language strongly suggests that only intentional torts are actionable. On the other hand, the bulk of the authority speaks of torts generally, not specifically limiting a cause of action to intentional conduct. See, e.g., Bischofshausen, 145 Ariz. at 210 (speaking of torts in general terms); Dawson v. Withycombe, 216 Ariz. 84, 101 (App. 2007) (same). Further muddying the waters, the Albers court cited with approval language from American Jurisprudence Second of Corporations stating that "a director or officer of a corporation is individually liable for

fraudulent acts or *false representations* of his own."   <u>Albers</u>, 201 Ariz. at 52 (quoting 18B AM. JUR.2D CORPORATIONS § 1882 (1985)).  False representations, as distinguished from fraudulent acts, are not necessarily the product of intentional conduct. Given the confusion on this issue, this Court will err on the side of inclusiveness, finding that claims grounded in negligence are actionable under Arizona law.

Having decided that both of Plaintiff's claims are potentially actionable, this Court wishes to note that in their Motion For Judgement on the Pleadings, Defendants, with the exception of alter-ego theory—an area of law clearly inapplicable in this case—did not offer any other reason why they are entitled to judgement on the pleadings.  In their Reply, Defendants responded to Plaintiff's arguments only by denying that Mr. Klamet and Mr. Kohler acted in their individual capacities. (Dkt. #29, p.2).  Once again, the Defendants are correct, but their assertion does not wound the Plaintiff's claim since this Court has established that under Arizona law, corporate officers may be held personally liable for torts committed in furtherance of company business.  Defendants also argued for the first time in their Reply that Plaintiff failed to sufficiently plead its Fraud claim.  (<u>Id.</u>)  The Court need not consider Defendants' position, however, since it was first raised in their reply brief.  <u>See</u> <u>Eberle v. City of Anaheim</u>, 901 F.2d 814, 818 (9th Cir. 1990) (noting that legal arguments raised for the first time in the reply brief are deemed waived). Thus, even if the argument has merit, this Court cannot appropriately consider it, since Plaintiffs did not have the opportunity to respond. <u>See</u> <u>United States v. Romm</u>, 455 F.3d 990, 997 (9th Cir. 2006).  Accordingly, this Court finds that Defendants are not entitled to a judgement on the pleadings.

/ / /

**III:   DEFENDANTS MOTION FOR PERSONAL JURISDICTION**

    **A.   Standard**

To establish personal jurisdiction, plaintiff has the burden of showing that (1) forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. ARIZ. R. CIV. P. 4.2(a); Doe v. American Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997). Therefore, the issue before the Court is whether the exercise of jurisdiction over Defendants accords with due process. See Omeluk, 52 F.3d at 269.

Where an evidentiary hearing is not held, dismissal for lack of personal jurisdiction is appropriate only if the plaintiff has not made a *prima facie* showing of personal jurisdiction. Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 300 (9th Cir. 1986). "[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996) (citing WNS, Inc. v. Farrow, 884 F.2d 200, 2003 (5th Cir. 1989). However, a court may not assume the truth of allegations in a pleading that are contradicted by affidavit. Data Disc, Inc., v. Systems Tech. Assoc, 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff is able to meet its prima facie burden, the movant can nevertheless continue to challenge personal jurisdiction either at a pretrial evidentiary hearing or at trial itself. Metropolitan Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064, n.1 (9th Cir. 1990).

Due Process requires that the nonresident defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. General jurisdiction exists where a non-resident defendant engages in substantial, continuous or systematic activities within the forum. Perkins v. Benquet Consol.Mining,Co., 342 U.S. 437, 445 (1952). When a defendant's contacts with the forum do not rise to the level required for general jurisdiction, a court may exercise specific jurisdiction over a claim when it arises from the defendant's activities within that forum. Shute v. Carnival Cruise Lines, 897 F.2d 377,897 F.2d 377, 381 (9th Cir. 1990) rev'd on other grounds, 499 U.S. 585 (1991).

**B.      Analysis:**

In its complaint, Plaintiff, an Arizona company, alleges that these Individual Defendants made false representations to MNI employees through telephone, email, and mail that caused acts to occur in Maricopa County, Arizona.  (Compl., p.2, 3–4).  These representations allegedly included multiple promises to make payment that were never kept, as well as assurances that Defendant Improvita had secured or was about to secure new lines of credit that would allow it to make payment.  (Compl., 3–4)   As a result of these statements, Plaintiff contends Defendants induced it to continue shipping product to Improvita and to forbear from bringing a lawsuit, thereby causing financial injury. (Compl., p. 10).  Defendants have not submitted controverting affidavits, thus this Court must accept the uncontested allegations in the complaint as true for the purposes of its analysis.  Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002).

**1.      Fiduciary Shield doctrine**

As a threshold issue, this Court must determine if the fiduciary shield doctrine prevents it from exercising jurisdiction over the Defendants.  "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum

state is not sufficient in itself to permit that forum to assert jurisdiction over the person."

Davis v. Metro Productions, Inc., 885 F.2d 515, 520 (9th Cir. 1989). In Calder v. Jones, the Supreme court limited the reach of the fiduciary shield doctrine, holding that a defendant's "status as [an] employee[] does not somehow insulate [her] form jurisdiction." 465 U.S. 783, 790 (1984). Instead, the Supreme Court directed lower courts to access an employee-defendant's contact with the forum state individually. Id. The Ninth Circuit, applying Calder, has determined that:

> because the Arizona long-arm statute extends to the limit of constitutional due process and because it is not equitably limited by the fiduciary shield doctrine, the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of Calder. . . . Thus, Arizona's long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona.

Davis, 885 F.2d at 522 (internal citations omitted). Accordingly, the Court finds that Defendants are not protected from personal jurisdiction by their status as corporate employees. Instead, the jurisdictional question will be answered based on "traditional notions of fair play and substantial justice" as embodied in the minimum contacts doctrine. International Shoe, 326 U.S. at 316.

### 2.    Minimum Contacts

Plaintiff, while not conceding lack of general jurisdiction over individual Defendants, makes its argument for personal jurisdiction based primarily on specific jurisdiction. The Ninth Circuit utilizes a three-prong test to evaluate the nature and quality of Defendants' contacts for purposes of specific jurisdiction; the test provides:

> (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections; 2) the claim must be one which arises out of or results from the defendant's forum related activities; and 3) exercise of the jurisdiction must be reasonable.

EDIAS Software Intern., LLC v. BASIS Intern. Ltd., 947 F. Supp. 413, 417 (D. Ariz. 1996).   All three factors must exist for personal jurisdiction to apply. Omeluk v. Langstein Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

The first prong of the test—purposeful availment—is "treated . . . somewhat differently in tort and contract cases." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). When confronted with a claim in tort the court must "inquire whether a defendant 'purposefully directed his activities' at the forum state, applying an effects test that focuses on the forum in which the defendants' actions were felt." Id.   To satisfy the effects test, a defendant must have: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.   Under this test, a defendant need not have had physical contact with the forum state for a court to exercise its jurisdiction. Brainerd v. Governors of the University of Alberta, 873 F.2d 1257, 1260 (9th Cir. 1989).

For its *prima facie* showing of personal jurisdiction, Plaintiff relies exclusively on the allegations set forth in its complaint.  Therein, Plaintiff asserts two tort claims against Defendants; Fraud and Negligent Misrepresentation.  The former is an intentional tort claim, while the latter is not.  Plaintiff contends that the effects test is applicable to both causes of action.  This is incorrect: "It is well established that the [effects] test applies only to intentional torts, not to . . . breach of contract and negligence claims." Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450, 460 (9th Cir. 2007). Accordingly, the Court will analyze Plaintiff's fraud claim under the purposeful-direction effects test, and its negligent misrepresentation claim under the purposeful availment standard.

### a.  Purposeful Direction

The first prong of the effects test requires the Court to find that Defendants committed an intentional act.  "'Intent' in the context of the 'intentional act' test refer[s] to

an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004). And, an "'act' denotes an external manifestation of the actor's will." Id. (quoting The Restatement (Second) of Torts § 2 (1964)). The phone calls, emails, and mailings sent by the Defendants and the misrepresentations therein constitute intentional acts for the purposes of the effects test. The acts alleged in the Plaintiff's complaint cannot occur spontaneously or because of reflex, thus Defendants must have intended to perform them. And it goes almost without saying that Defendants' intent to perform them clearly manifested itself externally. Accordingly, this Court has no trouble finding that the intentional act prong of the effects test has been met. See Calder, 465 U.S. at 789 (finding the researching, writing, editing, and publishing of an allegedly libelous article is an intentional act); Schwarzenegger, 374 F.3d at 806 (holding that placing an add in a local newspaper constituted an intentional act); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir.2000) (finding that the sending of a demand letter constituted an intentional act).

Next, the court must consider whether the Defendants expressly aimed their intentional acts at Arizona. The "express aiming" requirement is met when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, 223 F.3d at 1087. Acts that have merely foreseeable effects in the forum state are insufficient. Id. In the instant case, Defendants must surely have known that the consequences of their allegedly wrongful conduct would be felt in Arizona. After all, the Defendants made each and everyone of their alleged misrepresentations directly to Plaintiff, an Arizona corporation. These actions constitute the type of "individual targeting" that is the gravamen of the expressly-aiming test. See, e.g., Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1112 (9th Cir. 2002) ("Because Watts and Boenneken knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and

communicated directly with those California decisionmakers, we conclude that their actions were "expressly aimed" at the forum state."); <u>Bancroft & Masters</u>, 223 F.3d at 1087 (finding that a demand letter sent to Virginia was expressly aimed at California because it targeted a California corporation).

Finally, the Court must determine if the Defendants caused harm that they knew was likely to be suffered in the forum state "[W]hen a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the "effects" test permits that forum to exercise personal jurisdiction". <u>Dole</u>, 303 F.3d at 1114. In other words, when the Plaintiff's principal place of business is located in the same forum at which the defendant aimed her intentional acts, the Court may find that a defendant knew harm was likely to be suffered in the forum state. <u>See</u> <u>Id.</u> Such is the situation at hand. This Court has already decided that Defendant aimed its actions at Arizona and that Plaintiff's principal place of business is Arizona. This being the case, all that is left for the Court to decide is if Plaintiff has alleged harm. In its pleadings, Plaintiff claims that Defendants' misrepresentations caused it both to continue shipping product to Imporvita and to forbear from bringing a lawsuit, and that these decisions caused it economic injury. (Cmplnt., p.4). The Court, therefore, believes that the causing-harm prong of the effects test has been met. Consequently, the Court also finds that Defendants purposefully directed their alleged fraudulent conduct at Arizona, satisfying the first prong of the minimum-contacts test.

### b. Purposeful Availment:

Before moving onto the second and third elements of the minimum contacts test, the Court will consider whether the purposeful availment element has been satisfied with respect to Plaintiff's negligent-misrepresentation allegation. Defendants argue that their contacts with Arizona are limited to communications via US Mail, email, and phone calls, and that these actions are insufficient to find purposeful availment. (Dkt. #29, p.4). Plaintiff, arguing for an application of the effects test, did not directly address this issue.

The purposeful availment standard is meant to determine whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 297 (1980). And, it "is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well." <u>Brainerd v. Governors of the University of Alberta</u>, 873 F.2d 1257, 1259 (9th Cir.,1989). "Jurisdiction may not be avoided by a lack of physical contact with the forum state." <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987). "Nevertheless, a defendant may not be haled into a jurisdiction as the result of random, fortuitous or attenuated contacts or based upon the unilateral acts of third parties." <u>Id</u>.

Plaintiff's negligent misrepresentation suit is brought against Messrs. Kohler and Klamet in their corporate capacity as officers of Defendant Improvita. As such, the Defendants' contacts with Arizona cannot reasonably be said to have been for their benefit, instead they were for the benefit of their employer. Similarly, this Court cannot find that these Defendants have conducted business in Arizona, only that their employer has. Accordingly, it is difficult for this Court to conclude that they have enjoyed the benefits of or invoked the protection of Arizona's laws. Additionally, and in light of the Defendants lack of business contacts with Arizona, the Court has concerns about the sufficiency of Defendants' contacts with Arizona. <u>See</u> <u>e.g.</u> <u>Scullin Steel Co. v. National Ry. Utilization Corp.</u>, 676 F.2d 309, 314 (8th Cir. 1982) ("The use of interstate facilities (telephone, the mail) . . . are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process."); <u>see</u> <u>also</u> <u>Brainerd</u>, 873 F.2d at 729 (declining to find purposeful availment test met where alleged contacts consisted of communications between individuals at two universities, and the defendant did not otherwise conduct business in the proposed forum state). In sum, the Court does not believe these Defendants' contacts with Arizona were such they should reasonably have

anticipated being brought to court there. Accordingly, this court must decline to exercise its jurisdiction over Defendants on Plaintiff's negligent misrepresentation claim.

Before moving on, the Court acknowledges that at first blush it seems illogical that personal jurisdiction could potentially be exercised over these Defendants on one claim, but not the other. After all, both claims stem from the same set of facts and allege the same contacts with Arizona. The different tests that the Court must apply to each claim, however, dictate such a result. See, e.g., See Brainerd, 873 F.2d at 729 (finding that defendant's contacts did not satisfy the purposeful availment test, but did satisfy the purposeful direction test). In finding that Defendants satisfied the purposeful direction test, the Court focused on whether defendants knew or should have known their intentional acts would have an effect in Arizona. In making this determination, the Court did not have to wrestle with many of the considerations that are essential elements of purposeful availment, such as whether Defendants conducted business with Arizona or personally benefitted from such activities. Had it been required to do, the Court's determination may well have been different.

### c. Arising Out of the Forum Related Activities:

Having determined that Plaintiff's fraud claim satisfied the first prong of the minimum contacts test, the Court must " rely on a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). The question, therefore, is: but for the Individual Defendants' contacts with the Plaintiff, would the Plaintiff's claims have arisen? Plaintiff answers this question in the affirmative, arguing that had Defendants not made fraudulent representations, it would not have suffered the economic harm alleged in its complaint. (Dkt. #28, p.9). The Court agrees with this logic. Taking, as it must, the Plaintiff's allegations as true, it is reasonable to assume that Plaintiff would not have continued to ship product to a company that had

not paid it for previous shipments, except for the assurances of payment and ability to pay made to it be the Defendants. The Plaintiff has carried its burden on this element.

### d.    Reasonableness

Finally, the Court needs to determine if exercising personal jurisdiction over the Defendants is reasonable. The Court must "presume that an otherwise valid exercise of specific jurisdiction is reasonable." Ballard, 65 F.3d at 1500. To avoid jurisdiction, Defendants "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). In determining reasonableness, the Court must consider:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum

Dole, 303 F.3d at 1114. Finally, the court must balance and weigh all seven factors; none is dispositive. Ziegler v. Indian River County, 64 F.3d 470, 475 (9th Cir 1995).

### 1.    Purposeful Injection:

The first element of the reasonableness prong of the minimum contacts test is purposeful injection. The Court has already concluded Defendants purposely directed their actions at Arizona. This finding, however, does not necessitate a determination that the purposeful injection elements satisfied. "There may be circumstances under which the level of purposeful injection into the forum supports a finding of purposeful availment [or purposeful direction] yet still weighs against the reasonableness of jurisdiction." Dole, 303 F.3d at 1104. The Defendants—conflating the purposeful injection with the purposeful availment test—urge that they did not personally conduct any business in Arizona and have only been accused of sending emails and mail, and making phone calls;

actions they argue are insufficient to meet the purposeful availment test (or, presumably, the purposeful injection test). (Dkt. #29, p. 4). Were they accused merely of making phone calls and sending email, the purposeful injection prong would likely weigh in their favor. The problem with the Defendants' argument is that it separates the communications from their content. The communications are alleged to have conveyed fraudulent statements that caused Plaintiff, an Arizona corporation, to take actions which the Defendants must surely have known would cause it harm. By so doing, the Defendants purposefully injected themselves into this forum. See e.g. Id. at 1114 (finding purposeful injection where "[n]ot only did [defendants] know that their scheme would injure Dole U.S., which they knew had its principal place of business in California, but they also engaged in repeated communications with Dole managers in California in furtherance of their alleged scheme."). For these reasons, the Court finds that the purposeful injection factor weighs in favor of the Plaintiff.

## 2.    The Burden of Defending in the Forum

The next factor the Court must consider is the burden on Defendants of defending in the forum. Defendants, residents of Ohio, claim that forcing them to defend this matter in Arizona would place on them a substantial burden. In support of this contention, Defendants inform the Court that they are "individual entrepreneurs", and that traveling to Arizona, even for one day, would "seriously affect their ability to earn a likelihood." (Dkt. #29, p.5). "[U]nless the inconvenience [to the defendants of litigating in the forum state] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (internal quotation omitted). The Court is sympathetic to the Defendants' arguments, but notes that "modern advances in comminations and transportation have significantly reduced the burden of litigating" in another forum. Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir.1988). Taking the

- 17 -

Defendants at their word, the Court finds that this factor weighs against exercising its jurisdiction, but only slightly.

### 3. Conflict with the Sovereignty of Ohio

The Court must also consider the extent to which its exercise of jurisdiction in Arizona would conflict with the sovereignty of Ohio. Defendants argue that such a conflict exists because the legal theory on which the Plaintiff rests its case is not recognized in Ohio. (Dkt. #26). This Court, respectfully disagrees with the Defendants' conclusions. Just like in Arizona, Ohio recognizes that "[w]hen a corporate officer commits a tort while in the performance of his duties, he is individually liable for the wrongful act." See, e.g., Shaffer v. Frontrunner, Inc., 566 N.E.2d 193, 197 (Ohio App.,1990). This factor, therefore, presents no barrier to litigation in this case.

### 4. Forum State's Interest

The fourth factor that this Court must examine concerns Arizona's interest in having this case litigated in state. Plaintiffs argue that Arizona has a strong public-policy interest in preventing foreigners from committing torts against its citizens. (Dkt. #28, p.11). Defendant, on the other hand, denies that Arizona has any such interest, and, to the contrary asserts that should this claim be allowed to proceed, "the costs to the Arizona Court system conducting this trial will be thousands of dollars concerns out-of-state residents." (Dkt. # 29, p.5–6). The Court begins by noting that states have a strong incentive in providing their citizens with an effective means of redress from tort. See Sinatra, 654 F.2d at 1200. Second, the Court does not understand, nor have Defendants explained, how trying a case in federal court will cost the Arizona court system one cent, let alone thousands of dollars. For these reasons, the "forum state's interest" test weighs in favor of the Plaintiff.

/ / /

- 18 -

**5.      Efficiency of Adjudication**

Arizona is the most efficient forum in which to hear this case.  Both Parties point out, correctly, that evidence and witnesses can be found in both Arizona and Ohio. Accordingly, this consideration is a wash.  Therefore, given that this Court is already familiar with the claims, facts, and parties involved, it believes that this efficiency of adjudication can most readily be achieved by leaving the case where it is; in Arizona.

**6.      Convenience and Effectiveness of Relief for Plaintiff**

Sixth, the Court is required to look at the convenience and effectiveness of relief of having trial in Plaintiff's desired forum.   Plaintiff is an Arizona Corporation.  The maintenance of a suit outside of Arizona would clearly be less convenient for Plaintiff, and Defendant does not deny it is so.  Instead, Defendant argues that litigating the case in Ohio would be the most effective means of satisfying a potential judgement, but does not explain why this is so.  In sum, Defendants have not shown that the plaintiff's claims are more effectively remedied in Ohio. See Brand, 796 F.2d at 1075 (explaining that plaintiffs made no showing that Arizona constituted a more convenient forum). Consequently, the Court finds that this factor weighs in favor of the Plaintiff; Arizona is the most convenient and effective forum of relief.

**7.      Existence of an Alternative Forum**

The seventh, and final, factor in the reasonableness test is the existence of an alternative forum.  This element comes into play, however, "only when the forum state is shown to be unreasonable." Corporate Investment Business Brokers v. Melcher, 824 F.2d 786, 791 (9th Cir.1987).  This court does not believe that such a showing has been made, nor does it believe that any" regulatory or policy interests are served" by transferring the case to Ohio, the alternative forum proffered by Defendants.  Sinatra, 854 F.2d at 1201.

After balancing each and everyone of the reasonableness test factors, this Court concludes that its exercise of jurisdiction over the Defendants is both reasonable and

proper. The burden of rebutting the presumption of reasonableness lay with the Defendants; it was not met. Id. Therefore, this Court finds that Plaintiff has made the necessary *prima facie* showing of jurisdictional fact with respect to its fraud claim. The Court cannot exercise jurisdiction over Plaintiff's negligent misrepresentation claim, as the facts plead do not permit a finding that the first element of the minimum contacts test—purposeful availment—has been satisfied.

However, "[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004). Under the doctrine of pendent personal jurisdiction the court may exercise its jurisdiction "over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Id. at 1180. Such a decision is completely within the Court's discretion and should be made to promote "judicial economy, avoidance of piecemeal litigation, and overall convenience." Id. at 1181. Plaintiff's negligent misrepresentation claim against Defendants, over which this Court does not have jurisdiction, clearly arises from the same set of operative facts. Consequently, the Court finds that exercising its jurisdiction over both of Plaintiff's claims against these Defendants would promote the interests of justice and the efficient use of the parties' and the Court's resources.

**Accordingly,**

**IT IS HEREBY ORDERED** that Defendants Thomas Klamet and Daniel Kohler's Motion for Judgement on the Pleadings, (Dkt. #26), is DENIED

**IT IS FURTHER ORDERED** that Defendants request to Dismiss Plaintiff's claims for lack of personal jurisdiction, (Dkt. #26), is DENIED as to Plaintiff's fraud claim and GRANTED as to Plaintiff's negligent misrepresentation claim.

**IT IS FURTHER ORDERED** that Plaintiff's claim for negligent misrepresentation will remain part of this case under the Court's discretionary application of pendent personal jurisdiction

DATED this 29th day of September, 2009.

Mary H. Murguia
United States District Judge